UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **WILMINGTON TRUST, NATIONAL ASSOCIATION,** *not in its Individual Capacity but solely as Trustee for MFRA Trust 2015-1,*<br><br>    **PLAINTIFF**<br><br>v.<br><br>**STEPHEN R. VIGNEAULT AND TREASE N. VIGNEAULT,**<br><br>    **DEFENDANTS**<br><br>v.<br><br>**NCEP LLC,**<br><br>    **PARTY-IN-INTEREST** | **CIVIL NO. 1:19-CV-572-DBH** |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

  I conducted a bench trial on August 3, 2021, in this residential mortgage foreclosure case. Apart from the plaintiff mortgagee, only the defendant mortgagor Stephen Vigneault appeared at trial. He challenged the foreclosure, but he stipulated to admission of all but two of the plaintiff's exhibits.

  There is no contest that the mortgage has been in default since 2012. The primary issues are the competence of the witness from the plaintiff's loan servicer to testify about the records of previous servicers or holders of the mortgage, whether her testimony could properly admit the notices of right to cure (Exhibit 9) and the so-called payment history (Exhibit 11), and whether the notices of

right to cure satisfied the Maine statute.[1]  After hearing the testimony and reviewing the exhibits, I make the following findings of fact and conclusions of law.  See Fed. R. Civ. P. 52(a).

### FINDINGS OF FACT

1. On September 29, 2006, the defendant mortgagors executed a first mortgage of the property at 18 Constitution Avenue, Hampden, Maine.  Pl.'s Ex. 2.  The mortgage named Sun Mortgage—New England, Inc. as the lender and was recorded in the Penobscot County Registry of Deeds in Book 10652 Page 323.

2. The plaintiff now owns the mortgage on the property, pursuant to a series of valid assignments.  Pl.'s Exs. 3-6.

3. The plaintiff holds the note, a copy of which is Pl.'s Ex. 1.  I examined the original note at trial.

4. The plaintiff has "certif[ied] proof of ownership of the mortgage note and produce[d] evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage."  14 M.R.S.A. § 6321; see Bank of Am., N.A. v. Greenleaf, 2014 ME 89, ¶¶ 21-22, 96 A.3d 700.

5. The defendant mortgagors have made no payments since 2012.

6. Notices of default and right to cure were mailed to both defendant mortgagors.  Pl.'s Ex. 9.

---

[1] The defendant mortgagor Stephen Vigneault did not file a trial brief.  I base my understanding of the issues he raises on his lawyer's opening statement, closing argument, and arguments made in resisting the admission of Plaintiff's Exhibits 9 and 11.

7. The plaintiff has established that as of August 3, 2021, it was due a total of $367,880.53. See Pl.'s Ex. 11 at 41.

8. There is no evidence of public utility easements on the property.

8. Priorities:

    a. The plaintiff is in first position.

    b. According to the plaintiff's Complaint, NCEP, LLC is a party-in-interest in a second position. Compl. ¶ 22. However, it failed to answer and is defaulted. It also did not submit an affidavit of debt or appear at trial.

## Conclusions of Law

1. This Court has jurisdiction based upon diversity of citizenship. 28 U.S.C. § 1332.[2]

2. As the holder of the note and the owner of the mortgage, the plaintiff has standing to foreclose. See Greenleaf, 2014 ME 89, ¶ 9, 96 A.3d 700; 14 M.R.S.A. § 6321.

3. The plaintiff has satisfied each of the eight elements necessary to prevail on the merits and is entitled to judgment of foreclosure. See Greenleaf, 2014 ME 89, ¶ 18, 96 A.3d 700.

4. There has been a breach of condition in the plaintiff's mortgage. See 14 M.R.S.A. § 6322.

---

[2] At the final pretrial conference, the defendant suggested that subject matter jurisdiction might be an issue. The plaintiff then filed an affidavit concerning its status and citizenship. (ECF No. 43). The defendant did not challenge the affidavit. I conclude that diversity jurisdiction exists based upon the reasoning of my order in 1900 Capital Tr. III By US Bank Tr. Nat'l Ass'n v. Sidelinger, No. 2:19-cv-220-DBH, 2021 WL 864951 (D. Me. Mar. 8, 2021).

3

5. The amount due the plaintiff mortgagee is $367,880.53, plus reasonable attorney fees and court costs. Id.

6. By failing to adequately appear NCEP, LLC has no rights to excess proceeds from the foreclosure sale. See Bankr. Estate of Everest v. Bank of Am., N.A., 2015 ME 19, 111 A.3d 655.

### *Resolution of Specifically Disputed Issues*

The plaintiff mortgagee put on its case through exhibits that were admitted mostly by stipulation and the testimony of an employee of Planet Home Lending, the servicer for the loan and holder of the business records concerning the loan. The defendant mortgagor who appeared at trial challenged the admissibility of Exhibit 9 (the notices of right to cure that the plaintiff says it sent the mortgagors) and Exhibit 11 (records purporting to show and support the calculation of the amount now due and owing on the loan) and the Planet witness's lack of personal knowledge.

### *Plaintiff's Exhibit 9*

First, I conclude that plaintiff's Exhibit 9, the notices of right to cure, was properly admitted. Rule 803(6) was satisfied; the witness testified that Exhibit 9 was part of Planet's business records kept on the plaintiff's behalf. Included in Exhibit 9 are post office certificates of mailing to the mortgagors. According to Maine's foreclosure statute, those certificates are "conclusive proof of receipt [by the mortgagors] on the 7th calendar day after mailing notice." 14 M.R.S.A. § 6111(2-A); see Wilmington Trust, N.A. v. Berry, 2020 ME 95, ¶¶ 18-19, 237 A.3d 167. I conclude that the notices were properly mailed and received, and contain all the statutorily required information.

The defendant also argues that the notices do not meet the statutory itemization requirement. On itemization, the statute requires:

> An itemization of all past due amounts causing the loan to be in default and the total amount due to cure the default;
>
> An itemization of any other charges that must be paid in order to cure the default;

14 M.R.S.A. § 6111(1-A)(B), (C). What these notices said on that score was:

> An itemization of all past due amounts, including, but not limited to, reasonable interest and late charges, attorney's fees and other reasonable fees and costs, causing the loan to be in default is as follows:
> | | |
> |---|---|
> | Payments | $ 128,435.89 |
> | Late Charges | $     1,601.49 |
> | Attorney Fees & Costs | $        173.80 |
> | TOTAL TO CURE DEFAULT | $ 130,211.18 |

Pl.'s Ex. 9. I conclude that the itemization here satisfies the statute. The "Payments" of $128,435.89 are the total of the past due amounts that the mortgagors never paid; the other charges are the late charges and attorney fees that the statute requires be itemized separately. The statute does not require the notice to separate out principal, interest, and escrow payments, and no Law Court case has held that such is required.

The defendant seems to argue that a proper calculation of principal, interest, and escrow balance as of the notices' date differs from the total payments that the notices identify as past due amounts. I have already quoted the statutory language. I see nothing in that language that requires the mortgagee to recalculate, as of the date of notice, exactly what the status of the

escrow fund is (positive or negative) rather than rely on the total of missed monthly required payments that caused the default.[3]

I conclude that the itemization is sufficient.[4]

### *Plaintiff's Exhibit 11*

In his challenge to Exhibit 11, the defendant argues that the Planet witness did not have sufficient information to lay a foundation to admit the payment document under Fed. R. Evid. 803(6) and could not explain all its contents and establish that the payment history was trustworthy. I admitted Exhibit 11 provisionally at trial. I now remove the "provisionally" qualification for the following reasons.

In today's world, mortgages are frequently owned and/or serviced by a succession of businesses. The First Circuit has laid out in a Maine mortgage foreclosure case the ground rules for admission of predecessors' business records held by a current servicer. In Jones, the First Circuit said that the evidentiary ruling is discretionary; that "[t]he key question is whether the records in question are 'reliable enough to be admissible'"; and referred to factors

---

[3] In the course of cross-examination, it emerged that not all the potential late fees were assessed or included in the late charges the plaintiff demanded in the notice of default and right to cure and that the late fee actually demanded matched a late fee that the servicer's internal records referred to as waived. (There was no evidence that the apparent waiver was communicated to the mortgagor.) If the notice had demanded more than was due for late charges, that could be a problem. But that is not the defendant's argument. Instead, he argues that the entries demonstrate the unreliability of the records for purposes of admissibility under 803(6). I disagree, and I see no reason why the mortgagee must demand *all* possible late charges in the notice of default and right to cure. If it omits some and the borrower meets the (thereby lower) demand stated in the right to cure, then the mortgagee can no longer seek to acquire the omitted late fees because any payment default will have been cured. See 14 M.R.S.A. § 6111(1), (1-A) ("the right to cure the default by full payment of all amounts that are due without acceleration"; listing what must be itemized in the notice and what must be paid to cure the default).

[4] Unlike JPMorgan Chase Bank, N.A. v. Lowell, 2017 ME 32, ¶¶ 16-18, 156 A.3d 727, the plaintiff did not suggest in the notices that reimbursement of escrow payments beyond the total payments might be required.

mentioned in the Advisory Committee Note to the rule.  U.S. Bank Tr., N.A. v. Jones, 925 F.3d 534, 538 (1st Cir. 2019).  Jones noted that the testimony in that case established "that the servicer relied on the accuracy of the mortgage history and took measures to verify the same"; that the servicer "incorporated the previous servicer's records into its own database and placed its own financial interest at stake by relying on those records"; that the servicer's "acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records"; that the mortgagor did not claim overbilling or unrecorded payments; and that the data did not show discrepancies that would produce doubt the records were trustworthy.  Id. (cleaned up).  Jones said that for admissibility of business records under 803(6), the witness need only be "one who can explain and be cross-examined concerning the manner in which the records are made and kept."  Id.

In this case, Plaintiff's Exhibit 11 includes Planet's records along with records from two previous servicers.  The Planet employee testified that Planet has an "onboarding team" that reviews all the records from previous servicers and all the payment histories before incorporating them into Planet's records and that Planet relies upon them in its day-to-day operations.  She testified that the team goes through the received payment history and calculates and ensures that all the payments are accurate; that the team reviews all the correspondence sent by the prior servicer and anything received from the borrowers; and that each acquired loan is reviewed individually.

As in Jones, the mortgagors do not claim overbilling or unrecorded payments; and the witness's testimony established that Planet took measures to

verify the accuracy of the mortgage history, incorporated it into its own database, and relied on it. Cross-examination revealed that the witness could not explain some calculations made at onboarding, but it did not shake her testimony about the manner in which the records are made and kept.[5]

The defendant mortgagor also challenges pages 39-40 of Exhibit 11, which list the monthly payments due, starting from the default in 2012. The defendant argued in closing that those pages were made in anticipation of litigation, not within Rule 803(6). But there was no evidence they were prepared in anticipation of litigation. Instead, the Planet witness testified that they were spreadsheets that an asset manager overseeing this specific loan made to review the payment changes that had been made over the loan's history because of escrow changes. I conclude that they are properly admitted as business records.

Exhibit 11 is admitted unconditionally.[6]

In sum, default is uncontested in this case; I have found the notice of default and right to cure sufficient; and the only remaining issue is the amount due. The defendant's argument seems to be that if he can show any error in the plaintiff's calculations of the amount due, foreclosure is defeated. I do not agree. An error in the amount the mortgagee requests at trial might call for reduction in the amount of the deficiency judgment or the amount assessed for redemption

---

[5] It also emerged that there had been a loan modification. The witness knew about it from her examination of the records, but she did not have the document in front of her at trial. That does not impair the admissibility of the payment history.

[6] To the extent the defendant is challenging pages in the document because they were not generated electronically but prepared by an unidentified Planet employee, the challenge does not succeed under Rule 803(6). I also note that the Planet witness testified that page 41, reflecting total amounts due, is an accurate summary of amounts due and owing. The defendant raised no objection to page 41 under Rule 1006. (Pages 39-40 may also fit Rule 1006.)

purposes, but it does not forfeit the mortgagee's ability to recover. Trials in all kinds of cases can result in modification of the amount a defendant must pay. The federal courts allow abundant discovery before trial to explore the accuracy of financial amounts sought so that a defendant can challenge the amount. Here, the defendant offers no alternative amount due, and has not demonstrated that the calculations the plaintiff made on the final page of Exhibit 11 are wrong.

## CONCLUSION

The plaintiff is entitled to foreclosure and a money judgment against the defendant Stephen Vigneault. But judgment cannot yet be entered. Co-mortgagor Trease Vigneault did not appear, and the plaintiff has not provided an affidavit that Trease Vigneault is not in the military, see 50 U.S.C. § 3931(b), and has not requested default judgment against her.[7] There are also specific requirements for a judgment of foreclosure under Maine statutes, 14 M.R.S.A. §§ 2401(3), 6322, and it is the plaintiff's responsibility to propose a judgment that meets them. By August 27, 2021, the plaintiff shall file all necessary documents. The defendant Stephen Vigneault may comment by September 7, 2021.

SO ORDERED.

DATED THIS 13TH DAY OF AUGUST, 2021

/s/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[7] Default was entered against the mortgagor Trease Vigneault on June 10, 2020. (ECF No. 16). Thereafter Trease Vigneault entered and emerged from bankruptcy. She remains in default in this case, but on account of her bankruptcy discharge, the plaintiff's lawyer at trial said the plaintiff no longer seeks any financial recovery against her, only foreclosure of her interest in the real estate.

9